Right, uh, we'll hear our first matter today, uh, in re K.B. Toys. Good morning, your honor. I know it pleases the court, uh, Matthew McGuire on behalf of A.S.M. Capital L.P. and A.S.M. Capital II L.L.P. Uh, the outside just would like to reserve five merits for rebuttal. That would be granted. Your honor, for the first time, uh, this circuit, any circuit since the advent of the bankruptcy code in 1978, is asked to, uh, interpret the meaning of section 502D of the bankruptcy code. Um, as this court is aware, this case arises from my client, A.S.M. Capital, purchased nine, a number of claims, issued in this appeal are nine claims in the face value of approximately $650,000. They were purchased from trade, original trade creditors in the K.B. case. And all but one of the claims were purchased prior to the trustee initiating an avoidance action. Subsequent to the trustee obtaining default judgments on all nine of the claims, uh, the trustee moved to object to the allowance of A.S.M.'s claim on the basis that they, the trustee had obtained, um, preference judgments against the original claim holders. It's important to note that at no time did the trustee obtain any type of judgment from A.S.M. or against A.S.M. That are sought in relief in the form of a preference judgment against A.S.M. They're all against the original holders of the claims. The bankruptcy court sustained, uh, the claim of objection on the basis that the, under 502D, the preference judgment is a personal disability of the claim and not the claimant. Um, there's no dispute that if the original claim holders had attempted to pursue the claims, they'd be barred by section 502D. They would absolutely take no, don't, that's absolutely correct, Your Honor. Um, and the reason there isn't, in some of the papers, these are things that we, the parties actually agree on. In that case, 502D acts in the way it should act. In that it's, one, has two, two real purposes. One is restorative in that you don't want to allow a claimant to obtain, to share in a distribution of a bankruptcy debtor's estate before they've had to return a preference. Go ahead, I'm sorry. What if the claim had been disallowed in the whole hands of the original claimant, and then the original claimant sold it to your client? Could that scenario have presented itself? And if it did, do you, are you saying your client could collect on the claim? I, well, I think there's two parts to that. First of all, I think as a practical reality, my client would never have bought the claim had it been disallowed. Um, second of all, had it been disallowed. And that's because the claim's problematic, right? It's a problematic claim. It's not a claim that your client wouldn't make any money off of because they wouldn't get any money. It's not commercially attractive at all to buy a disallowed claim. Right, so the problem is the claim, not the claimant. Correct? It depends on who's holding the claim. Why should that matter? Why should it matter who's holding the claim? If the claim's problematic in the hands of one, why isn't it problematic in the hands of another? Because it's only problematic because the party in that scenario, the party against whom it was disallowed, was the recipient of a preferential transfer. So, you wouldn't, you wouldn't, the purpose of 502D would, in that case, would be to disallow the claim of a claimant that received a preferential transfer. It was really all about, sort of, risk. Who should bear the risk? When the original holder goes out of business, the claim purchaser or the state? You know, Judge Andrews, I think both Judge Kerry and Judge Andrews spent a lot of time on that topic, and I would respectfully suggest that it is irrelevant in the analysis. The Bankruptcy Code is not a risk allocation model. It is a distributive model. It is a means to distribute whatever assets of an insolvent entity are left. Okay, it is not a... But your claim is in a good position to protect itself, whereas the state really can take a hit here. The state taking a hit? I don't think it's taking a hit. I mean, there's hundreds of millions of dollars in claims. Well, in this case, but in the next case, maybe not. Is my claim in a better... I don't know that I necessarily agree that's in a better position. Well, it can protect itself through the documents transferring the asset, right? It certainly can do that, yes. In fact, it did. Its own assignment language included, among other things, that in the event the claim is avoided, disallowed, etc., the assigner or agrees to make immediate restitution, meaning the original claim holder, your client had a contract where the original claim holder was on the hook for what might happen in the bankruptcy act. That's correct. We'll dispute that. It's a indemnification language. Call it what you will. I mean, it's standard language in almost any commercial contract. But that goes to Judge Rios' point that your client is in a position to weigh the risks and hedge against themselves. I am not disagreeing with that. I think our argument is that that's not relevant to the analysis or what the statute says. The statute, in its amendment, clearly states that it's a we don't believe it's going to be of any use at all. There's a disallowance of a claim from an entity from which properties were coverable. Let me ask you a question. We've got old section 57G. If that were in force today, would your argument be the same? Would the result be the same with that statute? Now, I know that statute is not in force anymore. I don't think that there's any real material difference between the two. Okay. But, again, it's easy to get lost in kind of the concept of risk allocation, which, again, I just don't think is really relevant. 502D, the purpose is very narrow. Again, that's to prevent entities who have received the preferential transfer from recovering on their claims, and that's it. And that's what it's designed to do, and that's not served in this case. Okay. Let me turn to something else. You relied pretty heavily on the Enron 2 case, a case that seems to have been criticized by a lot of commentators. But do you think that the sale assignment distinction made in that case is useful? We've argued it because Judge Schindler's opinion is out there. I think if the court accepts our argument, we don't need to go any further. We don't need to get into the sale assignment. The language either is what it means or we're off in the ambiguity land. But actually, if we agree with Judge Schindler, she draws the distinction between the assignment and the sale. You're saying she was wrong to draw that distinction? Yes. So if this is classified, you say, all right, okay. That's pretty much an unworkable distinction. It is murky at best. The state law is unclear, obviously, besides the general obligation laws and the case law. On one of those columns, the New York state law, our argument is to be clear that the language of Section 502D is clear. So we don't need to weigh into state law from your point of view. Nathan, would you agree that even if we did, there's a risk of disrupting the formative bankruptcy law? Sorry for the two-part question. No. Part one is, like I said, you don't need to reach it. Part two is you do reach it for the reasons we cite in our papers when we're on the New York state law. Again, the sale distinction, I would agree that the sale assignment distinction is, as I said, murky at best. It is very unclear from the case law and the New York case law and the case laws in other states what exactly the distinction is. Our position at its core is that you don't need to consider that, no. Thank you. With that in mind, I'll reserve the remainder of my time. Okay. All right, thank you. Thank you. Good morning, Your Honors. May it please the Court. I'm Susan Balachek from Aikerman Centrifuge. On behalf of the residual trustee, Dave Pelley, we're at the table with me are my two colleagues. One is Mark Dome, my partner at Aikerman Centrifuge. The other gentleman is Andrew Urbans from Richie's Angles and Famous Heart Local Council. Your Honor, as you can tell from our papers, we believe that the statute is clear. However, clear to us means that the 502D is focused on the claim, not on the entity that's holding the claim when the claim is asserted against the state. I believe three judges, there's Bankruptcy Judge Gonzales, Bankruptcy Judge Drain in Medium, and also Bankruptcy Judge Catton in KB twice, that believe the statute is clear on its face that the focus of the statute is allowances of claims and that once the claim has an infirmity or subject to disallowance based on a potential preference, that claim has an impairment that travels with the claim, whether it travels by loan of assignment or by sale. Because under the Bankruptcy Code, the definition of transfer is not limited to a sale or assignment. Now, on reading it, Judge Andrews in the district court believed that the statute was ambiguous because you have one judge deciding it one way, the other judge deciding it another way, so there can be some ambiguity. But Judge Andrews was very careful to say that Judge Carey below did an excellent job of looking through the legislative history, looking through the case law into the prior section of the code, which is 507G. That code section was not significantly changed from 1898 until the current Bankruptcy Code section. So you would agree with your adversary that 57G is roughly the same, and there's no substantive change between the current statute and the old one? Yes, Your Honor, I would agree. And therefore, the Swartz cases should inform us then, right? At a minimum, yes, Your Honor. I do believe that. And so, Your Honor, based on that, if you look at those cases, in the case number 57G, it would lead to the conclusion that 502D is focused on the claim, and to the extent the principle is that when a claim is impacted by potential preference recovery of the 502D, that infirmity travels with the claim, regardless of whether the claim is being asserted by a claims trader or whether it's being asserted by the initial holder of the claim. Your Honor, I also don't believe then that we disagree on the purposes of 502D. 502D is two-fold purposes that have been stated throughout the cases through Collier, and one is to coerce enforcement with judgments. The other is a particular and basically one of the bedrock principles of the bankruptcy law, and that is the equality of distribution to creditors. Now, in our situation, this has become stark because, as my colleague accurately cited the facts, we're in a situation where the trustee could not recover on judgments that it collected against preference defendants, and you have a claims trader who now is holding these claims. In this situation, somebody has to bear the risk. Putting the risk aside for a moment, it does impact the equality of distribution because, in the first instance, the creditors are not getting back a preference, which Congress, clearly in 547 of the Code, said you've got to give back the preference. The preference is recoverable. The reason the preference is recoverable is to allow all the creditors to share equally in a pot of funds, right? So now you have a preference defendant that is not able... I mean, does not give back the funds to share among all the creditors in this pot. Now you have a claims trader who has acquired this claim and this can say, well, you know what, we shouldn't be subject to a 502D defense, right? This doesn't apply to us. But, yeah, we should take this claim that would not otherwise be allowed in the hands of the original creditor and get money from this pot. So now you give the creditors twice. You give them the first time when they don't get back the preference that Congress requires they get back, and second... A little bit of distribution there. Exactly. You're basically devaluing the creditor's claim by allowing a trade... a trade... excuse me... a claims trader to then get a jump up on his claim by simply buying it from an original creditor and having it washed in their hands. It is a positive hypothetical, a cause to be some... a cause, at least. And that is if an avoidance obligor without a claim goes out and purchases claims, because the defense goes to the claim and not to the enemy, even though they have an obligation to the estate and they don't take care of that obligation, they would be able to recover on the claim under your construction of this statute. Well, you know, I've thought about that long and hard. That's not exactly correct because what the trustee would do in practice in that situation is the trustee would not distribute to the preference recipient any distribution on the claim that he purchased from a third party. And the reason we wouldn't do that is because we have a judgment. And we would hold off on that claim, that claim of distribution, until we recovered the distribution by effectuating the judgment and just essentially the claim was set off. That's what we would do. Okay. So let me... what would the impact... if we accept your rule, what would the impact be on the claims trading markets? Your Honor, that has been going on since the Enron case, Enron 2 was decided, I mean, since Enron 1. In Enron 2, you had a number of Friends of the Court briefs filed. You had a whole lot of hoops going on about what effect this is going to have on the whole trades market. Fast forward, right before this court, there's not a single Friends of the Brief that's been filed. KB Toys has been out there for over a year and a half. There's not been much interest expressed in the market. My view is just like Judge Carey said, it's just a whole lot of noise over nothing. Because clearly they can prevent it, they can take the identifications. So, in my view, it's just a lot of noise. Your adversary in their briefs talked about squirts and tried to distinguish it based upon the absence in their scenario of a direct traceable benefit, something like that. Can you tell me about your position on that? Well, Your Honor, what my colleague was alluding to is there was a decision unpublished in Texas. It was a decision. And that court tried to distinguish squirts by saying that there was some connection and some tracing to a preference. Well, clearly, on the 502B, there's no requirement that there be any connection or any trace between the claims holder, the original claims holder and any entity that may be asserting a claim. There's just nothing in the code to read that. There's been no other cases that say that we have to read some kind of requirement or some kind of tracing so that whosoever is asserting a claim in terms of disallowing has to have somehow benefited from a preference. It's just not there. If I'm not mistaken, the analysis there was pretty spare, right? Pretty spare. Not only that, they totally disregarded any analysis or any of the decision along the 57G. Their view was 57G was totally different. It was a change from 502D. So they ignored all the decisions and all the case law. So that clearly was not correct. Thank you. Another point that I did want to make is ASM's raising just before this court today about a judgment that no preference judgment was not asserted against ASM. Well, first, that's a new argument that was first raised in the reply brief. But to the extent that it's considered before this court, my view is it's pretty irrelevant because the trustee could not have sued ASM. Well, aside from being irrelevant, is it waived then? Yes, sir. I believe it's waived since it has not been considered by the courts below. It wasn't raised in the bankruptcy court and it wasn't raised in the district court. And before the bankruptcy court, the option was to raise anything. They could have taken discovery. They could have raised any issue. They had the opportunity. They didn't raise it. Anything else? Unless you notice I have many questions, I'll rest on the brief and we'll consider it. Well, I guess I just want you to address the bona fide purchaser. Sure. One of the things is under 550B of the bankruptcy code, it speaks to the good faith for value and lack of knowledge of transferees of property of the estate. Clearly, a claims acquirer did not acquire property of the estate. So by its terms, 550B does not apply. But the courts have looked at it sort of by some analogy to good faith. And the case law said, well, let's take a look at it and just sort of see whether there is any good faith. And the courts have said in the bankruptcy context, when you come to the bankruptcy court and you're dealing with a bankrupt company, whether it's by claims or otherwise, you're coming there with the knowledge that this company is in financial distress. And when a claims purchaser or a claims acquirer comes to the bankruptcy court and buys up claims, it clearly has knowledge of the disallowability of claims. ASM cannot dispute that. It's all assigned in agreements. Provide representations. Fund me. Ask me more. That the claim is not disallowable under any section of the code and is not subject to any preference claim. There's knowledge. It's in their documents. They sign them. They're charged for reading them. They come to the court. They have knowledge. And I know that one of the issues is whether under an initial transferee under the bankruptcy code, there's a little more strict liability. And the reason that is is because that initial transferee is actually the entity that has firsthand knowledge of the financial condition of the debtor. And that entity can monitor and take the minimum amount of due diligence to see what's going on, to make a judgment as to should they bear the risk, to somehow hedge against that risk. A third independent party doesn't. Those are your successor transferees. ASM is not that entity. So on a factual basis, you're attributing knowledge to them because they signed a contract with the entity from whom they purchased the claim? Is that one of the facts? Well, that is one of the facts, Your Honor. And clearly, because they came to the bankruptcy court, ASM, when we say repeatedly, when we say a sophisticated claims trader, that goes to knowledge. That goes to the amount of due diligence. You come to a bankruptcy court, you buy, through your own documents, they say they've bought upwards of 34 claims in this case, with face value of $7.5 million. They didn't come and just say, you know, creditors find me, you know, out of the blue. No, they went through dockets. They looked. So they did some due diligence. And clearly, they can't establish good faith with that knowledge. And it's not knowledge of the ability to adjudicate preference, but knowledge of the avoidability of the claims that it purchased under any defenses that may be raised, including preferences. And when you make the reference to they looked at dockets, are you relying on representations made and arguments before the district court, the bankruptcy court, about the access to PACER? Yes. Exactly. Exactly. They acknowledge access to PACER. They acknowledge they've done some due diligence. And these arguments are laid before the district court, and there are certain facts conceded, and say before the bankruptcy court, and the documents filed there. Thank you. Okay. Are there any questions? There's none. Thank you. Thank you very much, Ron. Thank you.    I can't hear. Okay. Oh, I'm sorry. You might have to ask, if there had to be a connection with the hypothetical we prosed in our opening brief. And counsel said there does not have to be a connection between the claim and the actual preference. That's something Norwood COPO 2d says. It says, you know, there is claims disallowed from an entity that recovered property, but has received an avoidable preference rather. So there has to be a connection between the claim and the actual preference. With respect to what effect this court's opinion on this matter will have on the market, regardless of whether there's been amicus briefs filed or not, by definition it's going to devalue claims in the secondary market. No claims trader will pay the value that they would otherwise pay if there's a possibility of disallowance based on someone sometime, possibly years later, having a preference judgment. I've thought about that. I mean, if we read the statute as the trustee asks us to read it, wouldn't there now be reinforcing the coercive effect of Section 502d on the avoidance of the goers, that they're going to have to recognize their obligation to remit the property back and at least preferential transfers? They have to remit the property back regardless of the court's decision. The preferences are recoverable from a judgment no matter what 502d says. I think 502d is simply a... If they want to sell their claims, if they want to sell their claims they're going to have to... because in this case they've got judgments against August 9th, I suppose. That's right. Only one came after... one required money after a judgment was acquired. That's right. So they have judgments and no collection from what I know. But that's not going to motivate a judgment debtor from otherwise satisfying that judgment. I mean, I don't know that whatever this court finds is going to have any effect on those judges. And in a lot of cases, these may be unsophisticated entities selling their claims because they want liquidity now. I mean, that's why people sell their claims because they don't want to wait 8 years, 9 years, 10 years to receive a distribution. But they get liquidity now and then they don't have to... they don't honor their obligations under the bankruptcy law. There's no evidence in the record that I'm aware of that suggests that the trustee attempted to execute those judgments. There are other tools for the trustee to obtain the judgments from. Now, is it true that you have identification agreements in each of these 9 contracts? I believe at least in 8. It's more than likely. This is standard commercial contract language you put in when you're purchasing. So you can go against the parties that you purchased if you're unsuccessful here? Recover from them? Hypothetically. Hypothetically, just like the trustee hypothetically can collect on their judgments? Correct. Okay. I'd like to follow up on something that Judge Manaski asked your adversary about 550B. When asked that question, one of the things your adversary said was because property in the state is not an issue, 550B doesn't provide you any kind of a good faith defense. Can I hear your position on that subject? And maybe you're not relying on 550, but I wanted to ask you that. Well, our position is that it's in the statute for a reason and if we're being put up against the same standard as a preference judgment defendant, that section 550 is equally applicable. But property in the state is an issue in your scenario, right? You have a claim holder making a claim against the state. That's correct. Property in the state is not involved. Let me interrupt you on that. Just briefly, there's this colloquy about access to peace and whether that – I think this would be the first court to hold that access to peace or some other constructive knowledge of a statute of a preference of the preference statute, which has five elements of a prima facie case and nine separate defenses. But you clearly have access to the Statement of Financial Affairs. Yes. The only thing the Statement of Financial Affairs says is it lists which entities receive transfers from the debtor within 90 days of the preference. Within 90 days of the petition date, which is one of five elements of a prima facie case under section 547. I'm not sure I understand the questions. Thank you, counsel. And thank you both, counsel, for excellent briefs and oral argument. We'll take the case under advisement.